IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JOHN E. BEAM,                                                                     PLAINTIFF

v.                                                    Civil Action No.: 3:04CV89-NBB-SAA

JO ANNE B. BARNHART,
Commissioner of Social Security,                                   DEFENDANT

**REPORT AND RECOMMENDATION**

      This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff John E. Beam for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. Plaintiff applied for DIB and SSI on or about October 7, 2002, (R. 65, 253), and alleged that he became disabled on November 6, 2001, due to back problems resulting from work-related accidents. The requests were denied, and plaintiff sought review by an administrative law judge ("ALJ"). In an opinion dated October 28, 2003, the ALJ found the plaintiff was not disabled and denied his requestss for benefits. (R. 12-23.) On March 15, 2004, the appeals council found no basis for review of the ALJ's decision. (R. 5-7.) The plaintiff now appeals to this court. The parties have not consented to have a magistrate judge conduct all the proceedings in this case, therefore the undersigned submits this report and recommendation to Senior United States District Judge Neal B. Biggers.

      The plaintiff was born on May 11, 1954, and he was forty-nine (49) years of age at the time of the hearing before the Administrative Law Judge ("ALJ") in this case. Plaintiff completed the seventh grade, and his employment history includes work as a machinist at a

foundry and as a maintenance helper at a sawmill, which required him to lift up to seventy-five pounds on a regular basis. (R. 82, 278-79.) Plaintiff applied for DIB and SSI benefits and claimed he suffered from low back pain, degenerative disk disease, numbness in his legs, insomnia, anxiety, depression, concentration and memory problems, and arthritis. (R. 81.)

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2004).[5] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[6] At step five the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2004).
[2] *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).
[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2004).
[4] 20 C.F.R. §§ 404.1520, 416.920 (2004).
[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2004). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525 (2004).
[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2004).
[7] 20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (2004).

other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)).

In the case at hand the ALJ initially found plaintiff's degenerative lumbar disc disease and chronic lumbar strain constituted "severe" impairments within the meaning of the Act but did not meet or equal a listed impairment. (R. 18.) The ALJ opined that plaintiff's residual functional capacity ("RFC") allowed him to lift twenty pounds occasionally, life ten pounds frequently, and stand, walk and sit for six hours in an eight-hour workday with no other restrictions. (R. 20.) Although plaintiff's residual functional capacity was such that he could not return to his past relevant work, the ALJ relied upon the Medical-Vocational Guidelines as a framework for decision-making and the testimony of a vocational expert in determining that there existed other jobs in the national and state economies which plaintiff could perform. (R. 22.) Accordingly, the ALJ concluded plaintiff was not disabled, and the Appeals Council agreed.

---

[8] *Muse*, 925 F.2d at 789.

3

(R. 5.)

Plaintiff now contends that the ALJ's decision was not supported by substantial evidence. Specifically, plaintiff takes issue with the ALJ's conclusion that his depression was not a severe impairment. Plaintiff points out that the ALJ rejected the opinions of Dr. Hardy, a Community Counseling Services physician, who noted decreased mental functioning and diagnosed major depression in February 2003. (R. 215-19.) Dr. Drumheller also conducted a consultative mental examination of the plaintiff in June 2003 and diagnosed major depressive disorder, single episode, moderate. (R. 239.) The ALJ determined that the findings of Drs. Hardy and Drumheller should be disregarded because plaintiff sought no treatment for a mental condition, he takes no medication for any such condition, and the findings were not based upon objective medical evidence. Plaintiff challenges these finds. In its responsive brief, defendant affirms the ALJ's decision to discount the opinions of these doctors for the same reasons the ALJ set out in his written opinion.

The Social Security Regulations define a "severe" impairment as one that "significantly limits [a claimant's] ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c) (2004). Since *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), the Fifth Circuit has interpreted § 404.1520(c) in the following manner: "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (quoting *Stone*, 752 F.2d at 1101). Moreover, reviewing courts are to "assume that the ALJ and the Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by

4

reference to [*Stone*] or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404-1520(c) is used." *Loza*, 219 F.2d at 391.

In the case at bar, the court finds the decision to disregard plaintiff's mental condition as a "severe" impairment was clearly in error and not supported by substantial evidence. Indeed, the *only* evidence in the record regarding plaintiff's mental condition is that he was depressed with decreased mental function, and his condition would obviously have more than a minimal effect on his ability to perform work-related tasks. Although to the ALJ "Hardy's disabling assessment appears greatly disproportionate to his own mental status examination, which as noted adduced entirely negative findings," (R. 21), Hardy's diagnosis was in line with Drumheller's, and there is no conflicting evidence in the record whatsoever. An ALJ may not simply substitute his own judgment for that of a physician without relying on other evidence from medical sources in the record. *See Goodson v. Barnhart*, 217 F. Supp. 2d 892, 900 (N.D. Ill. 2002). As one court has stated, "[w]hen the ALJ presumes to tell a physician that his conclusions are contrary to his own observations, he has moved from the realm of legal analysis to that of medical diagnosis, [and i]t is the [Commissioner's] duty to weigh medical opinions, not formulate them." *Dantin v. Apfel*, No. CIV. A. 97-1835, 1998 WL 397896, at *5 (E.D. La. July 10, 1998).

A vocational expert testified that, in his opinion, a hypothetical individual with the residual functional capacity as indicated by the records of Dr. Drumheller – specifically, "poor to no ability to deal with the public, to work with work stresses, to maintain attention and concentration, to handle complex job instructions, to behave in an emotionally stable manner or to demonstrate reliability [and] seriously limited but not precluded ability to follow work rules, relate to coworkers, use judgment, interact with supervisors, function independently, handle

detailed job instructions and relate predictably in social situations" (R. 295-96) – would not be able to perform jobs that exist in the national economy. (R. 296.) In itself, the fact that the ALJ erred in concluding plaintiff had no "severe" mental or psychological impairment warrants remand of this case for further consideration by the Commissioner, including further evaluation of the plaintiff and expansion of the record if necessary to reach a decision.[9]

The parties are referred to 28 U.S.C. § 636(b)(1)(B) and FED. R. CIV. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten (10) days of this date and "a party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*) (citations omitted).

Respectfully submitted, this the 26th day of May 2005.

                                                  /s/ S. Allan Alexander
                                                UNITED STATES MAGISTRATE JUDGE

---

[9] Because the undersigned concludes that the ALJ erred at step two of the sequential evaluation process by not finding plaintiff's mental condition was "severe," the court does not address plaintiff's claims of error in that the ALJ's determinations concerning his lumbar problems and other impairments, singularly or in the aggregate, as they relate to the Listings at step three or residual functional capacity at step five.